**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Kim Teel, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:10-CV-613 |
| | ) |
| vs. | ) |
| | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

O R D E R

This matter is before the Court on Magistrate Judge
Litkovitz's Report and Recommendation of August 22, 2011 (Doc.
No. 24) and objections to the Report and Recommendation filed by
Defendant, the Commissioner of Social Security, (Doc. No. 25) and
Plaintiff Kim Teel. Doc. No. 26.  Also before the Court is the
Commissioner of Social Security's motion to strike Plaintiff's
objections.  Doc. No. 28.  In her Report and Recommendation,
Magistrate Judge Litkovitz concluded that the Administrative Law
Judge ("ALJ") did not err in the weight he assigned to various
medical source opinions and that he accounted for all of
Plaintiff's impairments in developing her residual functional
capacity.  Judge Litkovitz concluded, however, that the ALJ
improperly evaluated Plaintiff's credibility because he did not
consider all of the factors for assessing subjective complaints
listed in 20 C.F.R. § 404.1529 and SSR 96-7p.  Therefore, Judge
Litkovitz recommended that the ALJ's decision be reversed and the
case remanded to the ALJ for further proceedings pursuant to

Sentence Four of 42 U.S.C. § 405(g).  For the reasons that follow, the parties' objections to the Report and Recommendation are not well-taken and are **OVERRULED.**  The Commissioner's motion to strike Plaintiff's objections to the Report and Recommendation is **MOOT.**  The Court **ADOPTS** the Report and Recommendation. Because the Court concludes that the ALJ did not apply the full-test for assessing Plaintiff's credibility, as required by Felisky v. Bowen, 35 F.3d 1027, 1040-41 (6th Cir. 1994), the decision of the ALJ finding that Plaintiff is not disabled is **REVERSED.**  This case is **REMANDED** to the ALJ for further proceedings consistent with this order pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I. Background

Plaintiff Kim Teel filed a claim for disability insurance benefits and supplemental security income based on depression, arthritis, and carpal tunnel syndrome.  Tr. 153. Plaintiff was born in 1961 and her past relevant work includes jobs as a cashier, feeder, machine packer, hand packager, and cleaner/housekeeper.  Tr. 59.  Plaintiff performed these jobs at the light to heavy level of exertion.  Id.  Plaintiff claims disability based on both physical and mental impairments.  The Court will summarize the relevant medical evidence in these two categories.

### A. Physical Impairments

2

The earliest records available relate to Plaintiff's treatment with Dr. Elsy Caldwell for bipolar disorder, bilateral carpal tunnel syndrome, arthritis in the knee, hypothyroidism, hypertension, and diabetes mellitus. Tr. 248.

In November 2006, Plaintiff had a cervical MRI which indicated focal kyphosis (abnormal curvature)[1] of the cervical spine at C5-C6 and C6-C7.  Tr. 252.  This, combined with disc disease at C5-C6, caused mild to severe spinal stenosis with cord compression.  The MRI detected a left paracentral disc protrusion at C6-C7 with an annular tear which compressed and slightly flattened the left side of the spinal cord.  Id.

In December 2007, Plaintiff had a spinal MRI which indicated postlateral disc protrusion at L4-5 which resulted in contact with and slight elevation of the L4 nerve root.  There was minor anterior and right posterolateral bulging at the same interspace.  The MRI also revealed minor anterior and bilateral posterolateral disc bulging at L3-4 without neural element contact and lower lumbar facet arthropathy.  Tr. 249-50.

Dr. Caldwell completed and returned to the Social Security Administration a questionnaire which, as Judge Litkovitz observed, is not entirely legible.  Tr. 246-249.  Dr. Caldwell reported that Plaintiff complained of hyperactivity, not

---

[1]  See Jensen v. Brown, 19 F.3d 1413, 1414 (Fed. Cir. 1994).

sleeping, depression, weight gain, numbness and tingling in her hands, and swelling and knee pain.  Dr. Caldwell indicated that Plaintiff had low stress and frustration tolerance, difficulties with concentration, and interacting with supervisors.  Dr. Caldwell stated that Plaintiff is unable to work.  Tr. 247.

In October 2006, Plaintiff underwent a nerve conduction study of her upper left extremity which indicated chronic cervical radiculpathy in the C6-T1 innervated root system.  The study also found that Plaintiff had moderate to severe carpal tunnel syndrome in the left wrist.  Tr. 253-54.

In January 2007, Plaintiff had surgery performed by Dr. Lisa Vickers to repair a right knee lateral meniscus tear.  Tr. 471.  Three weeks after the surgery, Plaintiff was still reporting pain in this knee.  On examination, however, there was no swelling or effusion and, although Plaintiff complained of pain throughout, she had full range of motion.  Tr. 469.  There was some weakness and quadriceps inhibition.  Id.  Dr. Vickers changed her from ibuprofen to Naprosyn and refilled her Vicodin prescription.  Dr. Vickers felt that Plaintiff would benefit from physical therapy but estimated that she could return to work in four weeks.  Id.  Plaintiff started physical therapy but was discharged for non-compliance, having attended only 3 out of 12 sessions.  Tr. 475.

After a two year interval, Dr. Vickers saw Plaintiff again in February 2009 complaining of a lump in her right foot as well as pain in the dorsal aspect of the right midfoot. Plaintiff also complained of knee pain.  Plaintiff also reported falling several times after slipping on ice and felt knee pain on ambulation.  On examination, there was no significant warmth, swelling, erythema, ecchymosis, or effusion in the right knee. Plaintiff had full range of motion with the knee but there was non-specific tenderness in the anterior of the knee and mild crepitation.  There was no ligamentous instability.  The McMurray test to evaluate for a torn meniscus[2] was negative.  There was some mild edema in the dorsal midfoot with nonspecific tenderness on palpation, but no indication of a mass or cystic fluid.  The skin was intact and Plaintiff was neurovascularly intact.  An X-ray showed mild degenerative changes in both the knee and foot. Dr. Vickers injected the knee with Lidocaine, Marcaine, and Celestone.  She felt that plaintiff has degenerative arthritis in the midfoot and possibly a ganglion cyst.  Tr. 468.

Dr. Richard Sheridan completed a consultative examination of Plaintiff in October 2007.  Plaintiff reported to Dr. Sheridan a one year plus history of intermittent pain and parathesias in both hands.  Plaintiff also reported nocturnal

---

[2]    See Hood v. Astrue, No. 05:09-CV-05007, 2010 WL 231582, at *7 n.3 (W.D.Ark. 2010).

awakening and shaking in both hands and wrists. Plaintiff also reported intermittent pain and popping and cracking in her right knee. She also reported difficulty sitting for long periods and going up and down stairs due to knee pain. Tr. 233.

Dr. Sheridan observed that Plaintiff's gait was normal and that she did not need an ambulatory aid. Plaintiff's standing and sitting stations were normal and the Romberg test was negative. Plaintiff got out her chair normally. She could get on and off the examination table without assistance. The heel to toe walk was symmetric. Plaintiff could squat to 50% without assistance. Plaintiff could reach overhead fully with each upper extremity. Grip strength was 8, 10 and 10 with the right hand and 8, 4, and 4 with the left hand. Plaintiff had full range of motion with all extremities. Tr. 233-238. Dr. Sheridan noted Plaintiff's alleged bilateral carpal tunnel syndrome, but observed that her Phalen and Tinel's signs were negative for carpal tunnel syndrome. TR. 239. Dr. Sheridan stated that he could not state for sure whether Plaintiff had carpal tunnel syndrome without the results of her EMG and nerve conduction study. Dr. Sheridan concluded, "Presuming that she does [have carpal tunnel syndrome], I think her residual functional capacity is for sit-down work, lifting no greater than 10 lbs. with preclusion to temperature extremes and no rapid manual work with either hand. Tr. 239.

6

In November 2007, Dr. Jerry McCloud completed a file review and provided a physical RFC assessment to the SSA.  Tr. 275-282.  Dr. McCloud concluded that Plaintiff can lift 50 pounds occasionally and 25 pounds frequently.  He stated that Plaintiff can sit for 6 hours and stand and/or walk for 6 hours in a normal workday.  Dr. McCloud stated that Plaintiff can perform unlimited pushing and pulling within her weight limits.  Tr. 276.  He indicated that Plaintiff can climb ramps or stairs occasionally but could never use ladders, ropes, or scaffolds.  Reaching in all directions was unlimited as was fingering and feeling.  Plaintiff's ability for gross manipulation handling was limited.  Tr. 278.  In arriving at this RFC, Dr. McCloud noted Dr. Sheridan's opinion that Plaintiff was limited to sedentary work but rejected this conclusion based on her normal strength, range of motion, and gait.  Tr. 281.

In November 2007, a nerve conduction study showed mild carpal tunnel syndrome in Plaintiff's right hand.  Tr. 296-97.  In January 2008, Dr. Thomas Kiefhaber performed carpal tunnel release surgery on Plaintiff's left hand.  Tr. 291-92.  In a follow-up examination, Dr. Kiefhaber noted that the surgery relieved the numbness and tingling in Plaintiff's hand.  Tr. 190.  Dr. Kiefhaber stated that she could return to work immediately with a restriction on lifting no more than 10 pounds.  Tr. 289.

7

He also stated that Plaintiff could return to work in about one month with no restrictions.  Id.

From September 2008 to February 2010, Plaintiff received treatment from Dr. Marc Alexander for hypothyroidism, back pain, right knee pain, hypertension, high cholesterol, depression, insomnia, carpal tunnel syndrome, right foot pain, and diabetes.  As summarized by Judge Litkovitz, Plaintiff's physical examinations typically showed full range of motion all over except for decreased range of motion in the hips. Plaintiff's reflexes were normal and her gait was normal. Plaintiff reported knee and lower back pain.  There was tenderness, crepitation, and pain on extension of the right knee. An MRI taken in August 2009 revealed a broad disc bulge at L4-5 without nerve root impingement and mild degenerative arthritis at the right L5-SI fact joint.  See Doc. No. 24, at 16 (summarization of records).

In October 2009, Dr. Alexander completed a physical RFC form in which he indicated that, due to back pain, Plaintiff can lift 10 pounds occasionally and 5 pounds frequently.  He said that Plaintiff is capable of standing a total of 2 hours in one day and no more than 1 hour without interruption.  Dr. Alexander indicated that Plaintiff can sit for a total of 8 hours and for no more than 4 hours without interruption.  Dr. Alexander stated that Plaintiff can occasionally climb, balance, and stoop and

that she can never crouch, kneel, or crawl. She has some limitations on reaching and pushing and pulling. Plaintiff was restricted from heights, moving machinery, and temperature extremes. Dr. Alexander noted that Plaintiff's endurance might be affected by her pain medication, and that she might miss 3 or more days of work per week due to back pain. Tr. 283-286.

In May 2009, Dr. Theresa Aurand provided the Ohio Department of Job and Family Services with a physical RFC after an examination of Plaintiff. Dr. Aurand stated that Plaintiff can stand and/or walk for 2 hours in an 8 hour day and for no more than 1 hour without interruption. She said that Plaintiff can sit for 8 hours in one day and for 25 minutes without interruption. Dr. Aurand stated that Plaintiff is extremely limited in pushing/pulling, bending, reaching, and handling and that she is moderately limited in performing repetitive foot movements. Tr. 449. Dr. Aurand opined that these restrictions would last 12 months or more and that Plaintiff was unemployable. Tr. 451. In November 2009, Dr. Alexander provided a letter to Plaintiff stating that he agrees that Dr. Aurand's more restrictive RFC is appropriate. Tr. 447.

B. <u>Mental Impairments</u>

As already indicated, in 2007, Dr. Caldwell provided a statement listing some of Plaintiff's mental impairments, including depression, and an opinion that she is unable to work.

In October 2007, psychologist Dr. Norman Berg performed a consultative examination of Plaintiff. Tr. 226-232.  During the interview, Plaintiff related her personal history and reported feeling depressed for the past several years.  Plaintiff's speech was relevant, coherent, and clear.  She occasionally spoke in a loud manner but was not hostile, aggressive, or contrary. Plaintiff exhibited mood swings during the examination and cried several times during the interview.  Dr. Berg felt that Plaintiff was functioning in the average intelligence range.  Dr. Berg assessed that Plaintiff has moderately severe bipolar disorder. He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55, which indicates moderate symptoms and moderate difficulty in maintaining social, occupational, or school functioning.[3]  Tr. 231.  Based on his examination, Dr. Berg concluded that Plaintiff would have no difficulty understanding and following simple job instructions.  Plaintiff would have mild limitations in maintaining her attention and concentration. Plaintiff would have moderate limitations in her ability to relate adequately to others because of her agitation and labile effect.  Plaintiff would be moderately impaired in her ability to sustain work activity because of her depression, anxiety and mood

---

[3]     DeBoard v. Commissioner of Social Sec., 211 Fed. Appx. 411, 415 (6th Cir. 2006).

swings.  Plaintiff would have moderate limitations in her ability to cope with work stress.  Tr. 231-232.

In November 2007, Dr. Kristen Haskins completed a file review and provided a mental health RFC that concurred with Dr. Berg's RFC.  Tr. 272.  In March 2008, Dr. Marianne Collins affirmed Dr. Haskins's assessment.  Tr. 255.

In August 2008, Plaintiff reported to the emergency room at University Hospital after experiencing paranoid delusions which apparently resulted from some kind of argument with her neighbor.  Tr. 414.  Plaintiff reported at the time that she had not used crack cocaine for three months.  She was diagnosed with bipolar affective disorder and psychosis but was discharged without admission with a prescription for Seroquel.  Tr. 415.

Plaintiff received mental health counseling at Centerpoint Health Services from March 2009 to May 2009.  Tr. 485-491.  She was eventually discharged from treatment, however, because she only attended three sessions.

Plaintiff received some mental health treatment from Central Services in August 2009.  Tr. 424-434; Tr. 453-459.  The initial intake form observed that Plaintiff cried many times and appeared depressed.  She was assigned at GAF of 55.  Tr. 433.  The progress notes indicate that Plaintiff attended two counseling sessions and cancelled three other sessions.  Tr. 453-459.

The record has treatment notes for bipolar disorder from psychiatrist Dr. Kode Murthy, Tr. 444-445, which are generally illegible. They do, however, indicate prescriptions for Seroquel. Tr. 445.

Finally, the record contains an assessment of Plaintiff's mental health on her ability to do work provided by Western Hills Internal Medicine. Tr. 398-400. The signature on the form is illegible, however, and so it is unknown whether a doctor provided the assessment. In any event, the assessment indicates that Plaintiff would have a fair ability to perform all work-related activities. See generally id.

### C. The Evidentiary Hearing

Plaintiff's claim for benefits was denied initially and upon reconsideration. She requested and receiving an evidentiary hearing that took place on February 9, 2010.

Plaintiff testified that she has neck disease, back pain, and deteriorating discs in her back. She complained of carpal tunnel syndrome and said that she uses a cane sometimes depending on the severity of her knee pain. Tr. 40. Plaintiff testified that she takes Seroquel, Valium, Oxycodone, Synthroid for her thyroid disease, and blood pressure medication. Tr. 42-43. Plaintiff testified that the Seroquel makes her a little drowsy but that it helps her. Tr. 43, 46.

Plaintiff testified that she has problems dropping things because of carpal tunnel syndrome and can only lift about five pounds.  Tr. 44.  She said that she can only stand for about 15 minutes before her neck and back start hurting.  Id.  Plaintiff stated that she can walk about a half a block before she experiences pain in her back and neck.  She also said that she can only sit for about 25 minutes before her back begins to hurt.  Tr. 45.  Plaintiff said that she can bend somewhat and that she can reach okay "depending on how far it is."  Tr. 45.  She said she has some problems with stairs.  Tr. 45-46.

Plaintiff testified that she has been suffering from depression and paranoia for two or three years.  She said she has hallucinations but that Seroquel helps.  Tr. 46.

Plaintiff testified that she used to go bowling but lost interest in that.  She likes to read but has difficulty focusing because of racing thoughts.  Tr. 46.  Plaintiff has a good appetite unless she is upset or depressed, in which case she does not get out of bed and won't eat. Tr. 47.  She said her energy level is decreased and she has some memory problems.  Id.  Plaintiff stated that she has crying spells two or three times a week.  Tr. 47-48.  She does not spend much time with family or friends.  Tr. 48-49.

Plaintiff leaves her apartment to go to medical appointments or to do some light grocery shopping.  Tr. 49.

13

Plaintiff has a driver's license but does not own a car.  Tr. 50.
As already stated, Plaintiff may stay in bed all day.  Some days
she does light housework or watches television.  She can take
care of personal grooming and pay her bills.  Id.  Plaintiff can
do a little cooking and laundry if her son carries it to the
laundry room.  Tr. 51.

On examination by her attorney, Plaintiff testified
that despite the carpal tunnel release surgery, she still has
numbness and tingling in both hands.  Tr. 53.  Plaintiff said she
still has pain and swelling in her right knee.  Plaintiff stated
that Seroquel helps her sleep but she never sleeps through the
night.  She said she stays in bed all day three times a week.
Tr. 55.

The ALJ called on vocational expert Robert Breslin
during the hearing.  The ALJ asked the vocational expert to
assume the following hypothetical person: right hand dominate
with the past education and work experience of Plaintiff; she can
lift and carry 20 pounds occasionally and 10 pounds frequently;
she can stand or walk 6 hours in an 8 hour day; she can only
occasionally stoop, kneel, crouch or climb ramps or stairs; she
cannot crawl or climb ladders, ropes or scaffolds or use her
right leg to operate foot controls; she cannot work at
unprotected heights or around hazardous machinery; she can
remember and carry out short, simple instructions; she cannot

14

interact with the general public and can only have occasional
interaction with co-workers and supervisors; she cannot work in
jobs with rapid production rates or quotas; she can only work
with ordinary and routine changes in work setting or duties or
only with simple work-related decisions. Tr. 60-61.  Given that
RFC, the vocational expert testified that the hypothetical person
could perform Plaintiff's past work as a cleaner/housekeeper.
Tr. 61.  The vocational expert also identified a number of
unskilled light and sedentary jobs that this hypothetical person
can perform such as packing line worker, representative
inspector, and assembler.  Tr. 61-62.  The vocational expert
testified that there are a number of these positions available in
the national economy.  Id.  On cross-examination, the vocational
expert testified that if the hypothetical person were
significantly limited in bimanual dexterity, most of the jobs he
identified would be eliminated.  Tr. 63-64.  The vocational
expert also testified on cross-examination that if depressive
disorder prevented the hypothetical person from leaving her
bedroom three days a week, employment would be precluded.  Tr.
65.

### D. The ALJ's Decision

The ALJ issued a decision denying Plaintiff's claim for
benefits on March 18, 2010.  Tr. 11-21.  At the first two steps
of the sequential evaluation process, the ALJ found that

Plaintiff has not engaged in any substantial gainful activity since August 24, 2007 and that she has severe impairments of degenerative changes in the right knee, stenosis of the cervical spine, degenerative disc disease in the lumbosacral spine, bilateral carpal tunnel syndrome, and affective disorder.  Tr. 13.  At the third step, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or equal a listed impairment.  Tr. 16-17.

The ALJ next determined that Plaintiff has an RFC consistent with the hypothetical person posited to the vocational expert during the evidentiary hearing.  Tr. 17.  In arriving at this RFC, the ALJ summarized Plaintiff's testimony concerning the effect of her impairments, i.e., pain, dropping objects, paranoia, crying spells, racing thoughts, loss of concentration, as well as the effect that Seroquel has.  Tr. 17-18.  The ALJ found that Plaintiff's impairments could cause the symptoms she complains of, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not credible.  In discounting Plaintiff's credibility, the ALJ relied on her relatively benign physical findings and tests, the fact that her mental impairments have not required hospitalization, the fact that she was discharged from therapy for lack of compliance, the lack of documentation of hallucinations, her use of crack cocaine after the alleged onset date of disabiility, and

the lack of unbiased third party statements corroborating her statement.  Tr. 18.

In assessing the medical opinions, the ALJ gave some weight to Dr. Sheridan's opinion, but rejected it to the extent that it limited Plaintiff to sedentary work because it was based on the presumption that she has bilateral carpal tunnel syndrome. Instead, the ALJ relied on Dr. Kiefhaber's opinion that Plaintiff could return to work without restrictions following carpal tunnel release surgery.  Tr. 18.

The ALJ also gave no weight to Dr. Alexander's opinion that Plaintiff is limited to sedentary work because it is inconsistent with his own findings, which were virtually normal. Tr. 19.

The ALJ gave significant weight to Dr. Berg's opinion on Plaintiff's mental RFC because it was consistent with the record as a whole and was supported by Dr. Haskins's opinion. Tr. 19.

The ALJ gave some weight to the mental RFC provided by Western Hills Internal Medicine but apparently discounted this opinion to some degree because there was no indication that it was provided by a mental health professional.  Tr. 19.

Based on this RFC, the ALJ determined at the fourth step that Plaintiff would be able to perform her past work as a cleaner/housekeeper.  Tr. 19-20.  The ALJ also made an

17

alternative finding at the fifth step based on the vocational
expert's testimony that there are a significant number of
unskilled light and sedentary positions Plaintiff can perform wit
her RFC. Tr. 20-21. The ALJ determined, therefore, that
Plaintiff is not disabled under the Social Security regulations
and denied her claim for benefits. Tr. 21.

E. <u>District Court Procedural History</u>

The Appeals Council denied Plaintiff's petition for
review of the ALJ's decision, making the ALJ's decision the final
decision of the Commissioner of Social Security. Plaintiff then
filed a timely complaint with this Court for review of the ALJ's
decision.

Plaintiff's statement of specific errors identified
three claimed errors: 1) the ALJ erred in the weight he assigned
the various medical opinions; 2) the ALJ did not account for all
of Plaintiff's impairments in developing her RFC; and 3) the ALJ
did not properly assess her credibility.

In her Report and Recommendation, Magistrate Judge
Litkovitz rejected Plaintiff's first two assignments of error.
Judge Litkovitz determined that the weight the ALJ assigned to
the various medical opinions was supported by substantial
evidence. Judge Litkovitz also determined that the ALJ properly
considered all of Plaintiff's impairments.

Judge Litkovitz agreed with Plaintiff, however, that the ALJ's adverse credibility determination was not supported by substantial evidence. In arriving at this conclusion, Judge Litkovitz found that the ALJ failed to consider all the relevant factors for evaluating a claimant's credibility that are set forth in 20 C.F.R. § 404.1529(c) and SSR 96-7p. Specifically, Judge Litkovitz stated that the ALJ failed to consider whether Plaintiff's activities of daily living are consistent with her complaints of disabling symptoms, factors that aggravate her symptoms, and the extensive treatment she has received for her mental impairments. Judge Litkovitz also concluded that in rejecting Plaintiff's credibility, it was improper for the ALJ to rely on the fact that Plaintiff has never been hospitalized for her mental impairments, her discharge from therapy for noncompliance, her use of illegal drugs after the onset date of disability, and the absence of statements from unbiased third parties corroborating her statements. Therefore, Judge Litkovitz recommended reversing the ALJ's decision and remanding the case to the ALJ for a proper evaluation of Plaintiff's credibility.

The Commissioner filed timely objections to Judge Litkovitz's conclusion that the ALJ's credibility determination was not supported by substantial evidence. Plaintiff, however, did not raise any objections to Judge Litkovitz's Report and Recommendation until she filed a memorandum in response to the

19

Commissioner's objections.  Therefore, Plaintiff's objections were untimely.  The Commissioner moves to strike Plaintiff's objections on that basis.

## II. <u>Standard of Review</u>

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ.  <u>See</u> 42 U.S.C. § 405(g).  The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision.  "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>LeMaster v. Sec'y of Health & Human Serv.</u>, 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  <u>Id.</u>  Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury.  <u>Id.</u>  If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence.  <u>Elkins v. Sec'y of Health & Human Serv.</u>, 658 F.2d 437, 439 (6th Cir. 1981).  The district court reviews <u>de novo</u> a magistrate judge's report and recommendation regarding social

20

security benefits claims.  Ivy v. Sec'y of Health &  Human Serv.,
976 F.2d 288, 289-90 (6th Cir. 1992).

### III. Analysis

#### A. Plaintiff's Objections

The Commissioner correctly argues that Plaintiff's
objections were not filed by the time required by Judge
Litkovitz's Report and Recommendation and Fed. R. Civ. P. 72(b).
The Court, however, pauses briefly to address them since they are
without merit.

Plaintiff's objections to the weight the ALJ assigned
to the various medical opinions seem to suggest that he should
have found that she is only capable of performing sedentary work
based on Dr. Sheridan's opinion.  Even had the ALJ given full
credit to Dr. Sheridan's opinion, however, Plaintiff's claim
still would have failed at the fifth step of the sequential
evaluation process because the ALJ determined that there are a
substantial number of sedentary jobs that Plaintiff can perform.
In any event, the ALJ reasonably concluded, based on the plain
language of Dr. Sheridan's report, that his opinion that
Plaintiff is limited to sedentary work was based on the
assumption that she has carpal tunnel syndrome.  The ALJ further
reasonably concluded based on Dr. Kiefhaber's release of
Plaintiff to work without restrictions following successful
carpal tunnel release surgery, that Dr. Sheridan's evaluation, in

which all of Plaintiff's physical findings were normal, was a more accurate depiction of her physical capabilities.  While Plaintiff contends that the ALJ failed to consider the carpal tunnel syndrome in her right wrist, the only medical evidence in the record shows that the carpal tunnel syndrome in that wrist is mild.  Tr. 296-97.

Plaintiff also contends that the ALJ should have given more weight to Dr. Caldwell's opinion that she has poor stress tolerance and difficulty with close supervision.  Judge Litkovitz, however, correctly noted that Dr. Caldwell's opinion concerning Plaintiff's mental RFC is not supported by any contemporaneous treatment notes concerning her bipolar disorder. Wilson v. Commissioner of Social Sec., 378 F.3d 541, 544 (6th Cir. 2004) (to be entitled to controlling weight, treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques").  Moreover, Dr. Caldwell's opinion was inconsistent with Dr. Berg's opinion.  Finally, Dr. Caldwell's conclusory opinion that Plaintiff is disabled from working is not entitled to any deference.  Maple v. Apfel, 14 Fed. Appx. 525, 536 (6th Cir. 2001).

Plaintiff also contends that the ALJ erred by not considering the effect of all her impairments, specifically her right hand carpal tunnel syndrome and cervical radiculpathy in

22

the left upper extremity.  The Court has already discussed
Plaintiff's right hand carpal tunnel syndrome.  As noted, the
only medical finding is that it is a mild case and does not
support her claim that she can only lift 5 pounds.  The cervical
radiculpathy supposedly limits Plaintiff's ability to reach
overhead.  While the MRI on which Plaintiff relies does document
mild to moderate spinal stenosis, Tr. 251-52, she had full range
of motion in all extremities on examinations performed by both
Dr. Sheridan and Dr. Alexander.  See supra at 6, 8.  Thus,
Plaintiff's contention that she has limitations in overhead
reaching that the ALJ failed to consider is not supported by the
record.

Accordingly, Plaintiff's objections to the Report and
Recommendation are not well-taken and are **OVERRULED.**

## B. The Commissioner's Objections

The Commissioner objects to Judge Litkovitz's
determination that the ALJ's adverse credibility finding was not
supported by substantial evidence.  The Commissioner essentially
contends that all of the things the ALJ considered - Plaintiff's
lack of compliance with treatment, admitted drug use, relatively
benign physical findings - were all legitimate factors which
detracted from her credibility.  An ALJ's credibility
determinations are entitled to substantial deference and will not
be overturned lightly.  Hardaway v. Sec'y of Health & Human

Serv., 823 F.2d 922, 928 (6th Cir. 1987); Houston v. Sec'y of Health & Human Serv., 736 F.2d 736 F.2d 365, 367 (6th Cir. 1984).

The Court does tend to agree with the Commissioner that many of factors the ALJ relied upon in evaluating Plaintiff's credibility were in fact appropriate considerations, despite Judge Litkovitz's ruling to the contrary. For instance, there are a number of opinions indicating that the fact the claimant's impairment did not require hospitalization undercuts the claimed severity of the impairment. E.g., Monateri v. Commissioner of Social Sec., 436 Fed. Appx. 434, 445-46 (6th Cir. 2011)(affirming ALJ's adverse credibility ruling because claimant's mental impairments did not require acute inpatient or outpatient emergency care and treatment); Myatt v. Commissioner of Social Sec., 251 Fed. Appx. 332, 336 (6th Cir. 2007) (the fact that claimant was never hospitalized for mental or physical problems or received inpatient mental health treatment inconsistent with claim of total disability). It also seems self-evident that Plaintiff's admitted use of crack cocaine after the onset date of disability has some probative force in assessing the credibility of a person claiming to suffer from mental impairments. Finally, the claimant's failure to comply with prescribed treatment or counseling is a relevant factor in assessing her credibility; the only restriction in the Sixth Circuit is that the failure to comply with treatment cannot be a determinative factor in judging

24

the credibility of a claimant with a mental impairment.
Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).  In
this case, the ALJ clearly considered other factors in evaluating
Plaintiff's credibility.  Judge Litkovitz's Report and
Recommendation appears to have ruled that the ALJ may never
consider the claimant's failure to comply with treatment in
judging her credibility.

     The Court, nevertheless, concludes that Judge
Litkovitz's overall conclusion that the ALJ erred in assessing
Plaintiff's credibility was correct.  The ALJ's decision runs
afoul, in the Court's opinion, of two Sixth Circuit decisions.
In Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), the Court set
out and emphasized the procedure for evaluating the credibility
of the claimant's subjective complaints about the symptoms of her
impairments.  The ALJ must consider: 1) the claimant's daily
activities; 2) location, duration, frequency and intensity of
pain and other symptoms; 3) precipitating and aggravating
factors; 4) the type, dosage, effectiveness, and side effects of
medication the claimant takes to alleviate symptoms; 5)
treatment, other than medication, the claimant receives or has
received for relief of symptoms; 6) any measures the claimant
uses to relieve pain or other symptoms; and 7) other factors
concerning the claimant's functional limitations and restrictions
due to pain and other symptoms.  Id. at 1038.  The Sixth Circuit

requires the ALJ to apply the "full test" in evaluating the claimant's subjective complaints. Id. at 1040. Rogers v. Commissioner of Social Sec., 486 F.3d 234 (6th Cir. 2007), requires the ALJ's decision to "contain specific reasons for the finding on credibility, supported by evidence in the case record" and be "sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [the claimant's] statements and the reasons for that weight." Id. at 249.

In this case, the ALJ did not apply the "full test" for evaluating Plaintiff's subjective complaints. For instance, while the ALJ listed Plaintiff's daily activities, it is not apparent to the Court that the ALJ took the next step and explained how her daily activities affected his credibility analysis. As Judge Litkovitz explained in her Report and Recommendation, the same appears to be true with respect to whether there are any factors that aggravate or mitigate Plaintiff's symptoms. Nor does it appear that the ALJ considered Plaintiff's extensive history of treatment for mental illness. Thus, the ALJ erred by not applying all of the Felisky factors and, according to Rogers, the decision is insufficiently specific for the Court to evaluate the weight the ALJ to assigned to Plaintiff's statements about her symptoms. Accordingly, Judge

26

Litkovitz correctly determined that remanding this case to the ALJ for a proper credibility assessment is required.

<u>Conclusion</u>

For the reasons stated above, the parties' respective objections to Magistrate Judge Litkovitz's Report and Recommendation are not well-taken and are **OVERRULED**.  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ finding that Plaintiff is not disabled under the Social Security regulations is **REVERSED**.  This case is **REMANDED** to the ALJ pursuant to the Fourth Sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

**IT IS SO ORDERED**

Date <u>December 14, 2011</u>        <u>s/Sandra S. Beckwith</u>
                              Sandra S. Beckwith
                    Senior United States District Judge

27